UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**ALFASIGMA USA, INC.**                                    **CIVIL ACTION**

**VERSUS**                                                 **NO. 17-7753**

**EBM MEDICAL, LLC, ET. AL.**                              **SECTION "B"(4)**

## ORDER AND REASONS

Before the Court is Defendants EBM Medical, LLC ("Defendant EBM") and Food For Health International, LLC's ("Defendant FFH") (collectively, the "Corporate Defendants"), "Motion to Dismiss" (Rec. Doc. 22), Plaintiff Alfasigma USA's Response in Opposition (Rec. Doc. 29), and the Corporate Defendants' "Motion for Leave to File Reply in Excess of page Limitation" (Rec. Doc. 30). For the reasons discussed below,

**IT IS ORDERED** that Corporate Defendants' Motion for Leave to File Reply (Rec. Doc. 30) is **GRANTED**;

**IT IS FURTHER ORDERED** that Corporate Defendants' Motion to Dismiss (Rec. Doc. 22) is **DENIED as to Counts I, II, IV, V, and VI, and GRANTED as to Count VIII.**

**FACTS AND PROCEDURAL HISTORY**

Plaintiff Alfasigma USA, LLC ("Alfasigma") is a pharmaceutical company that manufactures and sells physician-prescribed medical foods. Rec. Doc. 1. Relevant here are three of Alfasigma's medical foods: CerefolinNAC, Deplin, and Metnax (the "Alfasigma Products"). *Id.* at 2. Alfasigma markets the Alfasigma

1

Products directly to physicians who then prescribe the Alfasigma Products to their patients. Rec. Doc. 1 at 9.

Made defendants in this case are two corporations, EBM Medical and Food For Health (the "Corporate Defendants"), and seven individuals[1]. Rec. Docs. 1 and 22. Defendant EBM Medical ("Defendant EBM") is a Missouri based start-up, founded in 2016. Rec. Doc. 22-1 at 2. Defendant EBM markets, promotes, and sells medical products to health care providers, including medical foods: EB-C3, EB-P1, EB-N3 and EB-N5 (the "Defendant Products"). Rec. Docs. 1 and 22-1. In particular, the Complaint alleges that Defendant Heard co-founded EBM Medical shortly after leaving his position as Director of Marketing for Alfasigma in April 2016. Rec. Doc. 1 at 10.

Essentially, Corporate Defendant EBM pays Corporate Defendant FFH to manufacture and distribute the Defendant Products to various healthcare providers. Rec. Doc. 22-1 at 2.

Alfasigma alleges that Defendant Products are "knock-off" versions of Alfasigma's Products using Alfasigma's proprietary and confidential information. Rec. Doc. 1 at 2. Specifically, Alfasigma alleges that Defendant Product EB-C3 is a "purported

---

[1] The individual defendants: Zachary Heard, Jason Tomlinson, Richard Wickline, Jeffrey Romano, Stephen Smith, Brendan Costello, and Russell Edwards all worked for Alfasigma prior to the filing of this lawsuit, and are currently employed by Corporate Defendant EBM. Rec. Docs. 1 and 21.

equivalent" of Alfasigma Product CerefolinNAC, EB-P1 is an alleged equivalent of Deplin, and that EB-N3 and EB-N5 are purported equivalents of Metnax. Rec. Doc. 1 at 3. Alfasigma further alleges that the Corporate Defendants used Alfasigma's confidential customer lists in order to market the Defendant Products to Alfasigma's physician customers. *See generally*, Rec. Doc. 1.

On August 11, 2017, Alfasigma filed an eight-count Complaint (Rec. Doc. 1) against Defendants, alleging the following: Count I) misappropriation of trade secrets in violation of the 18 U.S.C. § 1836 (the Defend Trade Secrets Act or "DTSA"); Count II) misappropriation of trade secrets in violation of LS § 51:1431 (the Louisiana Uniform Trade Secrets Act or "LUTSA"); Count III) breach of contract; Count IV) false advertising in violation of the Lanham Act; Count V) unfair competition in violation of the Lanham Act; Count VI) violation of the Louisiana Unfair Trade Practices Act; Count VII) Louisiana Civil Code, Article 2315; and Count VIII) tortious interference. The instant motion to dismiss was filed by the Corporate Defendants and seeks to dismiss Counts I, II, IV, V, VI, and VIII. Rec. Doc. 22.

**LAW AND ANALYSIS**

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a party to move for dismissal of a complaint for failure to state a claim upon which relief can be granted. Such a motion is rarely

granted because it is viewed with disfavor. *See Lowrey v. Tex. A & M Univ. Sys.,* 117 F.3d 242, 247 (5th Cir. 1997).

When reviewing a motion to dismiss, courts must accept all well-pleaded facts as true and view them in the light most favorable to the non-moving party. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). However, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Gonzales v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009)(quoting *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009))(internal quotation marks omitted). The Supreme Court in *Iqbal* explained that *Twombly* promulgated a "two-pronged approach" to determine whether a complaint states a plausible claim for relief. *Iqbal*, 129 S.Ct. at 1950. First, courts must identify those pleadings that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id*. Legal conclusions "must be supported by factual allegations." *Id*. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 1949.

Upon identifying the well-pleaded factual allegations, courts "assume their veracity and then determine whether they plausibly give rise to an entitlement of relief." *Id*. at 1950. A claim has

4

facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 1949. This is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. The plaintiffs must "nudge their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

**Counts I & II: Misappropriation of Trade Secrets under DTSA and LUTSA**

Counts I and II of the Complaint allege that in violation of the DTSA and LUTSA the Corporate Defendants willfully and maliciously misappropriated Plaintiff's various trade secrets related to the Alfasigma Products' formulation, marketing, pricing, and customers; including Alfasigma's customer lists. Rec. Doc. 1 at 20-22.

The DTSA allows for a private right of action for misappropriation of a trade secret where a plaintiff sufficiently alleges: 1) the existence of a trade secret; 2) misappropriation of that trade secret by another; and 3) the trade secret's relation to a good or service used or intended for use in interstate or foreign commerce. 18 U.S.C. § 1836(b)(1); *Source Prod. & Equip. Co. v. Schehr*, No. CV 16-17528, 2017 WL 3721543, at *2 (E.D. La. Aug. 29, 2017).

Louisiana is one of many states that has adopted the Uniform Trade Secrets Acts. La. Stat. Ann. § 51:1439 ("LUTSA"). It is well-accepted that the DTSA is in general comport with state trade secret law. *Compare* 18 U.S.C. §§ 1836, 1839, *with* Uniform Trade Secrets Act § 1 (amended 1985); *see also, Source Prod.*, No. CV 16-17528, 2017 WL 3721543, at *2. Under LUTSA, "misappropriation" is defined as:

> (a) **acquisition** of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or
>
> (b) **disclosure** or use of a trade secret of another without express or implied consent by a person who:
>
> > (i) used improper means to acquire knowledge of the trade secret; or
> >
> > (ii) at the time of disclosure or use, knew or had reason to know that his knowledge of the trade secret was:
> >
> > > (aa) derived from or through a person who had utilized improper means to acquire it;
> > >
> > > (bb) acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or
> > > (cc) derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or
> >
> > (iii) before a material change of his position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

La. Stat. Ann. § 51:1431 (Emphasis added).

Additionally, both DTSA and LUTSA similarly define "trade secret" as information[2] that derives independent economic value from not being generally known to or ascertainable by other persons, that is the subject of reasonable efforts to maintain the information's secrecy. La. Stat. Ann. § 51:1431; 18 U.S.C. § 1839 (2016).

As a threshold matter Plaintiff must allege the existence of a trade secret. 18 U.S.C. § 1839 (2016). Corporate Defendants' motion does not contest the existence of Plaintiff's trade secret(s). Rec. Doc. 22-1 at 19. This Court also finds that Plaintiff has sufficiently alleged the existence of a trade secret. Plaintiff's Complaint sets forth allegations regarding the formulation of its Alfasigma Products, as well as customer lists and other information used to market Alfasigma Products. Rec. Doc. 1 at 8. Alfasigma's complaint further alleges that this information is considered "highly proprietary" and that Alfasigma uses reasonable methods to keep this information secret; including the execution of confidentiality agreements. *Id*. at 10. Alfasigma's complaint goes further to allege that each of the seven individual

---

[2] Information includes: financial, business, scientific, technical, economic, or engineering information including a formula, pattern, compilation, program, device, method, technique, or process. *See* La. Stat. Ann. § 51:1431; 18 U.S.C. § 1839 (2016).

defendants were required to sign such confidentiality agreements upon hire. *Id*.

In support of their motion to dismiss as to Counts I and II, the Corporate Defendants contend that Alfasigma's complaint concedes that the overall composition of the Alfasigma Products are distinct from the Defendants Products. Rec. Doc. 22-1 at 19. The Corporate Defendants also maintain that Alfasigma fails to allege in specificity actions taken by the Defendants that amount to misappropriation. *Id*. at 20. However, these arguments are misguided. The portion of Alfasigma's complaint that discusses the notion that the compositions of the Alfasigma Products and the Defendant Products are distinct deals with Alfasigma's allegations regarding false advertising, not misappropriation of trade secrets. *Id*. at 19; *See* La. Code Civ. Proc. Ann. art. 892 (Article 892 allows a plaintiff to plead more than one alternative cause of action, even if the legal or factual bases for those causes of action are inconsistent or mutually exclusive.). Plaintiff's complaint contains sufficient allegations regarding misappropriation and disclosure of trade secrets by the defendants, especially Corporate Defendants' use of Alfasigma's "trade secret list of physicians" to market and sell Defendant Products to physicians on Alfasigma's customer lists. Rec. Doc. 1 at 12-13.

**Counts IV, V, and VI: False Advertising and Unfair Competition**

Counts IV and V of the complaint present accusations of 1) false advertising and 2) unfair competition by the Corporate Defendants, in violation of 15 U.S.C. § 1125(a), the "Lanham Act." Specifically, Plaintiff claims that the Corporate Defendants' promotional claims about their products are literally and/or impliedly false and misleading. Rec. Doc. 1 at 24. Plaintiff also claims that Corporate Defendants' representation that the Defendant Products "have the same formulation, quality and ingredients as the Alfasigma Products" is misleading and unfair competition. *Id*. at 26. Finally, similar to Count IV, Count VI alleges Corporate Defendants violated Louisiana Statute 51:411 (the "Louisiana Unfair Trade Practices and Consumer Protection Law" or "LUTPA") by making representations about their products that are untrue, deceptive and misleading. *Id*. at 28.

The Corporate Defendants argue that even if Alfasigma's allegations are accepted as true Alfasigma failed to properly allege reasonable consumer reliance on any misleading statement or fact. Rec. Doc. 22-1 at 11. Defendants further argue that Alfasigma's allegations of false and misleading statements fail to meet the standards set forth in *Twombly*.[3]

---

[3] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Section 43(a) of the Lanham Act requires a plaintiff to establish: 1) a false or misleading statement of fact about a product; 2) such statement either deceived, or had the capacity to deceive a substantial segment of potential consumers; 3) the deception is material, in that it is likely to influence the consumer's purchasing decision; 4) the product is in interstate commerce; and 5) The plaintiff has been or is likely to be injured as a result of the statement at issue. *Pizza Hut, Inc. v. Papa John's Int'l, Inc.*, 227 F.3d 489, 495 (5th Cir. 2000); *Taquino v. Teledyne Monarch Rubber,* 893 F.2d 1488, 1500 (5th Cir.1990).

In order to obtain monetary damages or equitable relief in the form of an injunction, "a plaintiff must demonstrate that the commercial advertisement or promotion is either ***literally*** false, or that . . . it is ***likely*** to mislead and confuse consumers." *Pizza Hut*, 227 F.3d at 495 (emphasis added). Additionally, "puffery" is non-actionable.[4] Finally, "with respect to materiality, when the statements of fact at issue are shown to be literally false, the plaintiff need not introduce evidence on the issue of the impact the statements had on consumers." *Pizza Hut*, 227 F.3d at 497; *Am.*

---

[4] The Fifth Circuit defines "puffery" as: (1) an exaggerated, blustering, and boasting statement upon which no reasonable buyer would be justified in relying; or (2) a general claim of superiority over comparable products that is so vague that it can be understood as nothing more than a mere expression of opinion. *Pizza Hut, Inc. v. Papa John's Int'l, Inc*., 227 F.3d 489, 497 (5th Cir. 2000).

*Council of Certified Podiatric Physicians & Surgeons v. Am. Bd. of Podiatric Surgery, Inc.*, 185 F.3d 606, 614 (6th Cir. 1999) ("Where statements are literally false, a violation may be established without evidence that the statements actually misled consumers.").

Here, Alfasigma's complaint sets forth a *prima facie* case for false advertising under the Lanham Act and LUPTA. Corporate Defendants are incorrect in their contention that Plaintiff's complaint is insufficient for failure to allege specific consumer reliance on any alleged misleading statements. Not only does Alfasigma sufficiently plead a *prima facie* case stating reliance (Rec. Doc. 1 at 25), Alfasigma further includes communications between Corporate Defendants and prior Alfasigma customers, where Corporate Defendants expressly and literally represent to the physicians that Defendant Products are "the same formulation such as Deplin with pharmaceutical grade quality ingredients at about 1/2 the price." Rec. Doc. 1 at 12. Plaintiff also includes a second correspondence between Defendants and another physician and the Corporate Defendants represent that they have a "Deplin brand equivalent that ships directly to the patient for $37 per month." *Id.* at 13.

As the requirements of the LUTPA "mirror those of the Lanham Act," and because Alfasigma has sufficiently pled pursuant to the Lanham, its state law claims of unfair trade practices withstand dismissal at this stage as well. *Louisiana World Exposition, Inc.*

*v. Logue*, 746 F.2d 1033 (5th Cir. 1984); *Advantage Media Grp. v. Smart Discipline, LLC*, No. CV 09-320-A-M2, 2010 WL 11538262, at *14 (M.D. La. Jan. 12, 2010).

**Count VIII: Tortious Interference with Business Relations.**

Plaintiff's complaint makes allegations of tortious interference with business relations against the Corporate Defendants, in violation of Louisiana Civil Code Article 2315(A). Rec. Doc. 1 at 29; La. Civ. Code Ann. art. 2315 ("Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it.").

Louisiana law protects a businessman from malicious and wanton interference. *McCoin v. McGehee*, 498 So. 2d 272, 274 (La. Ct. App. 1986). Accordingly, in a claim for tortious interference with business the plaintiff must show by a preponderance of the evidence that the defendant improperly influenced others not to deal with the plaintiff. *Junior Money Bags, Ltd. v. Segal*, 970 F.2d 1, 10 (5th Cir. 1992).

Here, Corporate Defendants assert that Count VIII should be dismissed for the plaintiff's failure to allege that the Corporate Defendants "actually prevented any identifiable third party from conduction business with Plaintiff." Rec. Doc. 22-1 at 7. We agree. While Alfasigma provides support for the alleged malicious conduct by Corporate Defendants, Plaintiff's Complaint fails to point to any third party that Corporate Defendants ***actually*** prevented from

conducting business with Alfasigma. We conclude that Alfasigma's complaint does not support a claim for tortious interference with business relations.

New Orleans, Louisiana, this 2nd day of April, 2018.

_____
SENIOR UNITED STATES DISTRICT JUDGE